UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SANDRA ROY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:12-CV-537-TAV-HBG |
| ) | |
| KIMBLE CHASE LIFE SCIENCE AND ) | |
| RESEARCH PRODUCTS, LLC, and ) | |
| RUSSELL BEARDEN, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION & ORDER

This civil matter is before the Court on Kimble Chase Life Science and Research Products, LLC ("Kimble Chase") and Mr. Russell Bearden's (collectively, "defendants") Motion for Summary Judgment [Doc. 41], in which defendants move for summary judgment on all of plaintiff's claims stemming from her termination as an employee with Kimble Chase. Plaintiff submitted a response opposing defendant's motion as to her claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* [Doc. 45], to which defendants replied [Doc. 47]. The parties also submitted supplemental briefs [Docs. 48, 50], along with various exhibits and deposition excerpts. Upon consideration of the arguments of the parties and review of the relevant case law, defendants' motion [Doc. 41] will be granted in part and denied in part.

**I.    Background**

This dispute arises from plaintiff's June 2012 termination from the human resources department at defendant Kimble Chase's manufacturing plant in Rockwood, Tennessee, where plaintiff had been employed since 2003 [Doc. 37 ¶ 8]. Although plaintiff was initially hired as a Human Resource Supervisor, she was subsequently reclassified as one of three Human Resource Generalists [*Id.* ¶ 9; Doc. 46-2 at 8-10], where she focused primarily on managing employee benefits [Doc. 46-2 at 10]. Another generalist, Ms. Christy Powers, focused on attendance and payroll, while Ms. Jeanne Largen focused on employee training and certification [*Id.* at 10-11]. During this time period, Mr. Bearden, the human resources manager, was plaintiff's immediate supervisor. [*Id.* at 2].

In 2009, plaintiff was diagnosed with a health condition affecting the nerves of her right leg which affected many of her daily life activities, including walking and working, and her required her to use a cane for mobility [Doc. 37 ¶ 11]. The condition also necessitated several surgical procedures to alleviate her symptoms, which required plaintiff to take medical leave under the FMLA for extensive periods of time. Specifically, plaintiff requested, and was granted, FMLA leave for a period of twelve weeks beginning in April 2010, six weeks beginning in September 2011, and another six weeks beginning in March 2012 [*Id.* ¶ 12]. Whenever plaintiff was on leave, she was paid from Kimble Chase's short-term disability policy. The parties do not dispute that

2

plaintiff was never denied leave under the FMLA or benefits under Kimble Chase's short-term disability policy during the course of her employment [Doc. 43-2 at 6].

In response to plaintiff's taking FMLA leave, plaintiff contends, Mr. Bearden began a series of discriminatory and retaliatory conduct toward her whenever she returned to work. As set forth in her Amended Complaint, these include remarks such as an email in which Mr. Bearden instructed plaintiff to "get off her butt," comments regarding plaintiff's extended period of time for recovery from surgical procedures, and, on one occasion, mocking her use of a cane following those procedures [Doc. 37 ¶¶ 17-18]. Defendants, however, deny that such comments were ever made or suggest that, at most, some comments may have been made in jest. In December 2011, Mr. Bearden reassigned plaintiff from first shift, the day shift, where she had previously worked, to the night shift, although plaintiff expressed concerns about the difficulty working nights would cause related to her medical treatment [*Id.* ¶ 18]. During this time period, Mr. Bearden also began to criticize plaintiff's work, followed by a series of oral and written disciplinary warnings on May 11, 2011, May 16, 2011, and again on January 2012, all of which, plaintiff argues, are contrary to her previous years of having no negative reviews or disciplinary action taken against her [*Id.* ¶ 16].

On June 1, 2012, Mr. Bearden requested that plaintiff attend a departmental meeting for all human resource employees [Doc. 37 ¶ 23]. When plaintiff arrived at the meeting, however, she realized that the meeting only involved herself, Bearden, and Kimble Chase's operations manager [*Id.*]. At that meeting, plaintiff was informed that

3

Kimble Chase was undertaking a reduction in workforce in the human resources department and that plaintiff had been selected for termination [*Id.* ¶ 24]. Mr. Bearden had previously recommended to Ms. Susan Tinnon, Kimble Chase's Vice-President for Human Resources, that plaintiff be terminated in April 2012 [Doc. 43-3 at 22]. It is undisputed that at the time of plaintiff's termination, plaintiff would not have been able to return to work, although she would have been eligible to receive STD benefits up until September 2012. Defendants maintain that no specific performance-related event triggered defendant's termination, but was based on several factors, including her poor job performance, non-cooperation with other employees, and the need to terminate a position in the Tennessee facility [Doc. 42 at 6].

Plaintiff subsequently commenced this action, alleging a violation of FMLA's anti-retaliation provision, 29 U.S.C. § 2615, interference with protected rights under ERISA, in violation of 29 U.S.C. § 1140, as well as violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1]

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

---

[1] The Court notes that plaintiff does not oppose summary judgment being granted in favor of defendants as to plaintiff's THRA, ADEA, and ADA claims  Summary judgment will be granted for both defendants as to these claims.

moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in

5

other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III. Analysis**

In light of plaintiff's agreement that summary judgment should be entered in favor of defendants for her THRA, ADEA, and ADA claims, the only remaining issues before the Court are whether defendants are also entitled to summary judgment as to plaintiff's FMLA retaliation and ERISA interference claims.

**A.     FMLA Retaliation**

The FMLA "entitles employees to an annual total of twelve weeks of leave for a number of reasons including, inter alia, because of a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Seeger v. Cincinnati Bell Tele. Co.*, 681 F.3d 274, 281 (6th Cir. 2012) (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003)).  Under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615.  In order to recover under the FMLA's retaliation provision, a plaintiff must show that the invocation of these rights served as the basis for her adverse employment action.  *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) ("'[R]etaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights.'" (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th

6

Cir. 2006)). Where, as here, plaintiff relies upon circumstantial evidence for her claims, the *Burdine-McDonnell Douglas* burden-shifting framework applies. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (FMLA). In order to establish her prima facie case, plaintiff must show: 1) that she availed herself of a right afforded under the FMLA; 2) that she suffered an adverse employment action; and 3) that there was a causal connection between the exercise of her rights and the adverse employment action. *Id.*; *see, e.g. Edgar*, 443 F.3d at 508. Upon satisfying these requirements, the burden then shifts to the defendant-employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee. *Edgar*, 443 F.3d at 508. The burden then shifts to plaintiff to show that the proffered reason was "a pretext to mask discrimination." *Skrjanc*, 272 F.3d at 315.

> 1. **Plaintiff's Prima Facie Case**

The parties' sole point of contention as to plaintiff's prima facie case is whether she can satisfy the third element, that is, whether there is a causal connection between her FMLA leave and her termination. In arguing that there is insufficient evidence of a causal connection, defendant focuses on its past granting of plaintiff's FMLA leave requests, her deficient performance reviews, and the fact that her termination was part of a reduction in force. Plaintiff in turn, relies upon the close proximity in time between her last FMLA leave and her termination as well as Mr. Bearden's actions in shifting plaintiff's work responsibilities and making various comments about her condition and its perceived effect on her work performance.

7

Upon review of the arguments of the parties, the Court finds plaintiff has created a genuine issue of material fact as to whether a causal connection existed between her FMLA leave and termination. Initially, the Court notes that plaintiff took her last FMLA leave in late March 2012 [Doc. 43-3 at 17], Mr. Bearden made his recommendation to Ms. Tinnon to terminate plaintiff on or about April 4, 2012 [*Id.* at 22], and plaintiff was ultimately terminated on June 1, 2012 [*Id.* at 23]. Thus, the time between plaintiff's taking leave and the recommendation of termination was only a matter of weeks, and her termination occurred less than three months later. "Although no one factor is dispositive in establishing a causal connection, evidence that the adverse action was taken shortly after a plaintiff's exercise of protected rights is relevant to causation." *Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 629 (6th Cir. 2008) (internal quotation marks omitted); *see also DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (finding that 21-day period showed causation in Title VII retaliation case and noting that in "certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise"); *Heady v. U.S. Enrichment Corp.*, 146 F. App'x 766, 770-71 (6th Cir. 2005) ("noting that temporal proximity "is sufficient to meet the low burden required to establish a prima facie case of retaliation in violation of the FMLA"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same). Given the close proximity here, the Court finds this evidence highly relevant to plaintiff's prima facie case.

8

In addition to the temporal proximity between her FMLA leave and her termination, plaintiff has also provided other evidence which could permit a jury to conclude that a causal connection existed between the two events. Specifically, plaintiff submitted evidence indicating that each time she returned from FMLA she was subjected to changing job responsibilities. For example, in 2010, when plaintiff returned from her first FMLA leave, Mr. Bearden announced that she would be returning with the title of "Projects Coordinator," and that as part of this, she was directed to inform others that Ms. Powers was in charge of the duties she used to perform prior to taking leave [Doc. 46-2 at 44]. This resulted in a 60% reduction of plaintiff's duties [Doc. 46-3 at172]. In 2011, after plaintiff returned from her second FMLA leave, Mr. Bearden moved plaintiff to the night shift, despite her apprehension that doing so may interfere with her doctor's appointments and other treatment [*Id.* at 55]. Similarly, plaintiff has presented evidence that, beginning when she took her first FMLA leave, she was subject to increased scrutiny regarding her work as well as disparaging remarks from Mr. Bearden. During depositions, plaintiff testified that Mr. Bearden would comment on how long it was taking to recover from her procedures and if she was ever going to get better, and on one occasion mocked her use of a cane [Doc. 46-1 at 255, 361]. Plaintiff has also submitted various emails in which Mr. Bearden criticized or otherwise chastised plaintiff, including a 2011 email in which he told her to "get off [her] butt" and a 2012 email in which he commented on how slow plaintiff was taking to complete her work [Doc. 46-10]. Several

9

of the errors attributed to plaintiff's work, she contends, were actually duties performed by other members of the human resources department [Doc. 46-1 at 208].

Taking this evidence in conjunction with the close temporal proximity between her FMLA leave and termination, the Court concludes plaintiff has presented evidence creating a genuine question of fact as to causal connection and thus her prima facie case.

### 2. Defendants' Proffered Reason and Pretext

Defendants spend the majority of their briefs arguing that plaintiff that the following reasons for her termination were pretextual: 1) her poor work performance, as evidenced by several disciplinary actions and declining performance reviews; 2) the reduction in workforce that resulted the termination of two positions; and 3) the fact that plaintiff would have been unable to return to work at the expiration of her FMLA leave. Plaintiff submits that the temporal proximity between the exercise of her third FMLA, along with the evidence of retaliatory conduct and factual questions as to the validity of defendants' proffered reasons, all support a showing of pretext.

A plaintiff "may show that an employer's proffered reasons for an adverse employment action are pretext for discrimination if the reasons '(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014) (quoting *Seeger*, 681 F.3d at 285). Regardless of the method employed, "[the plaintiff] always bears the burden of producing evidence from which the jury could reasonably

10

reject the defendant's explanation and infer that the defendant intentionally discriminated against him." *Seeger*, 681 F.3d at 285 (quotation marks omitted).

The Courts finds that plaintiff has presented sufficient evidence to raise a genuine question of fact as to whether the proffered reasons for her termination were pretext. As previously discussed, there is a close temporal proximity between plaintiff's exercise of her final FMLA leave and termination. Although "the law in this circuit is clear that temporal proximity cannot be the *sole basis* for finding pretext[,]" *Donald v. Sybra*, 667 F.3d 757 (6th Cir. 2012) (emphasis added), "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence," *Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009). In addition to close temporal proximity, plaintiff has presented evidence that she experienced differential treatment whenever she took and, more specifically, returned from FMLA leave, whether in the form of disparaging remarks and increased scrutiny or the reassignment of her duties from Mr. Bearden. While the factfinder may ultimately find this evidence insufficient to prove that "discrimination was the real reason" for her termination, *Seeger*, 681 F.3d at 285 (quotation marks omitted), at this stage of the proceedings the Court merely concludes the question is more appropriately reserved for trial.

Moreover, plaintiff has submitted evidence challenging defendant's claim that her termination was a result of poor performance and disciplinary problems. Defendants claim that plaintiff was terminated in large part because of her declining job performance, as evidenced by her evaluation forms, including those from 2010 and 2011. Both of

11

these years, however, have duplicate evaluations with varying ranks. For plaintiff's 2010 evaluations, an unsigned form is marked as "Does Not Meet" for the areas of Quality Orientation and Teamwork [Doc. 46-28], but another form, signed by both plaintiff and Bearden, contains no marks below "Meets Expectations" [Doc. 46-29]. There are also two unsigned 2011 evaluation forms. Similarly, plaintiff has presented evidence which calls into questions the factual bases for several of the disciplinary write-ups she received. In 2011, plaintiff received a written warning for unnecessarily calling a male witness to discuss a female employee's FMLA papers, which Mr. Bearden found put the female in an "embarrassing situation" and may have violated her privacy rights [Doc. 46-11]. Both plaintiff and the male witness, however, testified during discovery that the female employee was given blank forms and that no medical information was discussed [Doc. 46-1 at 299; Doc. 46-12 ¶ 5]. During discovery, Mr. Bearden also testified that he was unaware of how he learned about the incident [Doc. 46-21 at 74-76]. In January 2012, plaintiff received another written warning for the manner in which she investigated a complaint of sexual harassment [Doc. 46-17]. In addition to disputing the factual basis for the write-up, which alleges that plaintiff never asked the reporting employee if she asked the co-worker to stop the offensive conduct, plaintiff also submitted evidence that the reporting employee never complained to Mr. Bearden about plaintiff's conduct or the manner in which she conducted her investigation [Doc. 46-18 at 3].

    Viewing this evidence along with the temporal proximity between plaintiff's FMLA leave and termination as well as the other evidence previously discussed, the

Court finds that plaintiff has created issues of fact as to whether her termination was in retaliation for the exercise of her FMLA rights. Accordingly, defendants' motion for summary judgment as to this claim will be denied.

    B.    **ERISA Interference Claim**

Defendants also move for summary judgment on plaintiff's ERISA interference claim, arguing that she cannot show defendants had the intent to interfere with her ERISA rights. Plaintiff, relying in large part on arguments raised with respect to her FMLA claim, asserts that there are questions of fact that should be left for a jury.

Section 510 of the ERISA makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan] . . . ." 29 U.S.C. § 1140. Like the FMLA's retaliation provisions, a plaintiff asserting a claim under ERISA's interference provision must show that the adverse action was done for the purpose of interfering with one of the plaintiff's statutory rights. *See Hamilton*, 522 F.3d at 628 ("To state a claim under § 510, [plaintiff] must show that Defendants had a specific intent to violate ERISA."). When relying upon circumstantial evidence to prove her case, a plaintiff must follow the *Burdine-McDonnell Douglas* burden-shifting analysis. In the ERISA context, the burden-shifting framework first requires the plaintiff to establish her prima facie case "'by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become

13

entitled.'" *Crawford v. TRW Automotive U.S. LLC*, 560 F.3d 607, 613 (6th Cir. 2009) (quoting *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)). The employer must then proffer a legitimate reason, and "[i]f the employer makes this showing, the burden shifts back to the plaintiff to show that this proffered reason was a 'pretext'—i.e. a phony reason—and instead that the intent to interfere with the plaintiff's ERISA rights was a motivating factor." *Id.* (internal quotation marks omitted).

For the same reasons previously discussed with respect to her FMLA claim, the Court finds that factual issues also preclude a granting of summary judgment as to plaintiff's ERISA interference claim. With regard to her prima facie case, the short temporal proximity between her extension of FMLA leave, during which plaintiff received short term benefits, and her termination, could reasonably lead a jury to conclude that defendants began to see the costs which would be associated with plaintiff's continued employment and decided to terminate her when it became clear she would continue to require disability benefits. *See Ameritech*, 129 F.3d at 866 (noting that temporal proximity could "support an inference that the adverse actions were taken with the intent of interfering with future disability benefits"); *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 144 (6th Cir. 1996) (same). Plaintiff also submitted evidence indicating that both Mr. Bearden and Ms. Tinnon were aware that plaintiff would have been eligible to continue to receive short term disability benefits for another four months beyond her termination date at the time of their decision, which further supports the inference that she was terminated to prevent Kimble Chase from obligating itself to pay short-term

14

benefits [*See* Doc. 46-13 at 17]. As to defendants' proffered reason and pretext, the Court similarly concludes that plaintiff has presented additional evidence, that is, Mr. Bearden's retaliatory conduct, her changing job responsibilities, and inconsistency in her performance/disciplinary history, that sufficiently raise questions of fact to be resolved at trial.[2] Accordingly, defendants' motion for summary judgment as to plaintiff's ERISA claim will also be denied.

## IV. Conclusion

For the reasons discussed herein, defendants' motion [Doc. 41] will be **GRANTED in part** and **DENIED in part**. The Court finds summary judgment is proper as to plaintiff's claims under the THRA, ADA, and ADEA, and these claims are hereby **DISMISSED** with prejudice. This case will proceed to trial as to plaintiff's FMLA retaliation and ERISA interference claims.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Although defendants argue that the eventual receipt of long-term disability benefits moots plaintiff's ERISA claim, the Court finds that the receipt of long term disability would merely limit the amount of damages plaintiff may be awarded at trial rather than moot her claim altogether. In addition, to the extent defendants argue that her social security benefits foreclose her ERISA claim, defendants cite no case law for the proposition that receipt of social security benefits forecloses the receipt of ERISA benefits denied as a result of wrongful termination. Moreover, plaintiff has submitted evidence indicating that her disability benefits would have exceeded her social security benefits, which indicates that the amount of offset, if any, would be an issue to be determined at trial rather than a basis for granting summary judgment.